# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| ALICE M. HENSLEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No. 1:14-cv-125-WTL-MJD ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Alice M. Hensley requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court now rules as follows.

### I. PROCEDURAL HISTORY

Hensley filed her application for DIB on January 14, 2011, alleging disability beginning April 15, 2010, due, in large part, to back pain and related symptoms. Hensley's application was initially denied on March 10, 2011, and again upon reconsideration on July 19, 2011. Thereafter, Hensley requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on July 17, 2012, via video conference before ALJ Roxanne Fuller. Hensley and her counsel appeared in Indianapolis, Indiana, and the ALJ presided over the hearing from Falls Church, Virginia. During the hearing, Thomas Heiman testified as a vocational expert. On August 30, 2012, the ALJ issued a decision denying Hensley's application for benefits. The Appeals Council

upheld the ALJ's decision and denied a request for review on December 2, 2013. This action for judicial review ensued.

## II. EVIDENCE OF RECORD

The evidence of record is well documented in the ALJ's decision and need not be recited here. Relevant facts, however, are noted in the discussion section below.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d) (1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled.

§ 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.,* and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Id.*

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Hensley had not engaged in substantial gainful activity since April 15, 2010, her alleged onset date. At step two, the ALJ concluded that Hensley suffered from the following severe impairments: degenerative joint disease in the right knee; degenerative disc disease; lumbar spondylosis; osteoarthritis; fibromyalgia; migraines; irritable bowel syndrome ("IBS"); diverticulitis; gastrointestinal reflux disease ("GERD"); obesity; and depression. At step three, the ALJ determined that Hensley's severe impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Hensley had the residual functional capacity ("RFC") to perform sedentary work, with the following qualifications:

3

> [N]ever climb ramps or stairs; never climb ladders, ropes, or scaffolds; never balance; occasional stoop, crouch, kneel, crawl; frequent reaching and overhead reaching with the left non-dominant arm; occasional use of moving machinery; occasional exposure to unprotected heights; able to remember and carry out one to two step instructions; and able to perform simple, routine, repetitive tasks.

Tr. at 29. Given this RFC, and taking into account Hensley's age, education, and work experience, the ALJ determined at step five that Hensley could perform jobs existing in significant numbers in the national economy, those being a document preparer, a food and beverage order clerk in a hotel setting, and a final assembler (optical). Accordingly, the ALJ concluded that Hensley was not disabled as defined by the Act from April 15, 2010, through the date of her decision.

## V. DISCUSSION

Hensley advances several objections to the ALJ's decision; each is addressed below.

### A. RFC Assessment

#### 1. *Findings of Consultative Examiner*

On July 12, 2011, Hensley underwent a physical consultative examination with Dr. Matthew Surburg. Dr. Surburg noted that Hensley "is mordily obese. She is able to maneuver around the room with considerable difficulty, and became fatigued in the course of today's exam. As she became more fatigued, she also complained of increasing pain in her back." Tr. at 582. He further noted that Hensley's gait "is of decreased speed and stability with a rolling walker, and her imbalance without assistance was so great she was almost unable to walk." *Id.*[1] The ALJ noted in her decision that these facts support the RFC adopted in this case. Hensley argues, however, that sedentary jobs require "a certain amount of walking and standing," and "[j]obs are

---

[1] The rolling walker was not specifically prescribed by a doctor. However, she was released from the ER with a rolling walker on one occasion.

sedentary if walking and standing are required occasionally." Hensley's Br. at 19 (quoting 20 C.F.R. § 404.1567(a)). Hensley further notes that, according to S.S.R. 83-10, "[s]ince being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."

Based on these regulations, according to Hensley, the ALJ effectively found that Hensley is able to stand and walk for two hours in an 8-hour workday. Yet, the consultative examiner, who the ALJ credited, noted in his report that Hensley had some walking limitations. Hensley argues that because the ALJ did not include any walking restrictions in her RFC assessment, the ALJ's decision requires reversal. The Court agrees that the consultative examiner's notes appear to conflict with a finding that Hensley can stand or walk for two hours in an 8-hour workday. As a result, and because the ALJ claimed to credit the consultative examiner entirely, this matter must be remanded to the Commissioner for reconsideration. On remand, the ALJ is instructed to review Dr. Surburg's consultative examination, determine what weight should be given to Dr. Surburg, and assess an RFC that complies with that weight determination and the record evidence.

2. *Limitations related to Migraines, IBS, Diverticulitis, and GERD*

Next, Hensley argues that the ALJ found that Hensley's migraines, IBS, diverticulitis, and GERD cause more than minimal limitations on her ability to work (i.e., they are severe), but she failed to include any limitations related to those impairments. The Court is not particularly persuaded by Hensley's argument. However, because the credibility determination discussed below requires reversal, the ALJ is instructed to review this portion of her decision as well.

5

The ALJ did find that Hensley's migraines, IBS, diverticulitis, and GERD were severe impairments. Hensley complained that, at best, she suffered two migraines a month. She also claimed that she would have a "bad day" with diarrhea at least once per month. On a bad day, she must use the bathroom every 20 to 30 minutes. The ALJ did not credit these complaints, however, and concluded that the restrictions already included in the RFC accommodated the limitations associated with her migraines and bowel issues. Again, the Court does not see any obvious error with this portion of the ALJ's decision. However, because it is so intertwined with the ALJ's credibility determination, on remand, the ALJ should also revisit this portion of her decision.

### B. Credibility Determination

Hensley also argues that the ALJ's credibility determination was patently wrong. In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify her finding with specific reasons. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not discredit a claimant's testimony about [her] pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted). Of course, district courts "afford a credibility finding 'considerable deference,' and overturn [a finding] only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 36 F.3d 751, 758 (7th Cir. 2004)).

In this case, Hensley takes issue with each of the specific reasons (which are numerous) identified by the ALJ for her credibility determination. The Court agrees that the reasons given by the ALJ for her credibility determination are illogical, unsupported, and/or insufficient.

6

Hensley takes issue with the ALJ's statement concerning the helpfulness of her pain injections. She testified at the hearing that she usually had two days of relief before her pain would return. On one occasion, however, one of Hensley's treating physicians noted that an injection in January 2011, relieved her pain for a week. The Court finds that, whether Hensley experienced pain relief for an entire week on one occasion, as opposed to several days, does not reflect poorly on Hensley's statement that, generally, she experienced relief for only two days after an injection.

Hensley also faults the ALJ for questioning her credibility on the basis that a two-month follow-up visit with her orthopedic doctor indicated that her symptoms were not as limited as she alleged. Hensley argues that the fact that she "was to return to Dr. Blachly in two months to follow-up on multiple problems . . . does not logically lead to the conclusion that Hensley's back problems were not as limiting as alleged." Hensley's Br. at 23. The Court agrees. Two months between doctor visits does not automatically mean Hensley's symptoms are not disabling.

The ALJ also noted that Hensley's four-month gap in treatment between April 15, 2010, her onset date, and August 2010, was not consistent with an allegation of constant pain. Hensley argues, however, that the ALJ overlooked Dr. Blachly's note in January 2010, indicating that Hensley did not have insurance, but would have insurance in July 2010. It is not clear whether the lack of insurance was considered by the ALJ.

The ALJ also noted that Hensley was not credible because she did not comply with her physical therapy. Hensley argues that the ALJ did not consider why Hensley was noncompliant. Indeed, Hensley reported that the physical therapy was not helping and it made her symptoms worse. The ALJ should have considered this fact and other potential reasons (e.g., her other impairments) for Hensley's noncompliance.

Hensley argues that the ALJ also implied that her pain was always between a three and a seven on a scale of one-to-ten, and that after treatment, she was usually at a three. This however, misconstrued Hensley's testimony. The record shows that Hensley regularly complained that her pain was at a ten.

Hensley also argues that the ALJ misinterpreted her wheelchair use. Hensley reported that she uses a wheelchair to shop. The ALJ found Hensley less than credible, however, because she had not been prescribed a wheelchair or other assistive device. The Court does not see how Hensley's statement that she uses a wheelchair to shop makes her less than credible.

The ALJ also faulted Hensley for visiting her orthopedic doctor every three months. She reasoned that this indicated that her symptoms had stabilized and were not as limiting as she alleged. Hensley argues that stable symptoms do not necessarily mean that they are less limiting than alleged. Indeed, a condition can be stable and disabling at the same time. The Court simply does not see the logic in the ALJ's reasoning.

Hensley further notes that that the ALJ's statements concerning the helpfulness of her injections and pain blocks are also misleading. The ALJ noted that they provided her relief, yet, as Hensley points out, the record clearly shows that her pain always returned.

Lastly, Hensley argues that the ALJ's characterization of her activities of daily living was improper. Hensley testified that she shops and pays bills online, she uses an electric wheelchair when shopping, she helps care for her dog, she fixes simple meals two to four times per week depending on pain, she socializes with family and one friend once a month if she can, she sometimes fishes with her husband's help (for an hour at most), and she occasionally waters her garden and pulls some weeds. The ALJ concluded that these activities of daily living were

inconsistent with a disability. The Court does not agree. As Hensley argues, an individual can be disabled, yet able to perform these minimal tasks and activities.

In sum, the specific reasons given by the ALJ for her credibility determination are insufficient. On remand, the ALJ is instructed to redo her credibility determination and to give specific reasons that are supported in the record for her determination.

### C. Jobs Identified by Vocational Expert/ALJ

As noted above, the ALJ found that Hensley could work as a document preparer, a food and beverage order clerk in a hotel setting, or a final assembler (optical). Hensley argues that her limitations prevent her from working as a document preparer, a job with a General Educational Development ("GED") Reasoning Level of 3. The Court agrees.

The ALJ limited Hensley to jobs that involve simple, routine, repetitive tasks with only one- to two-step instructions. A Level 3 job requires the worker to apply commonsense understanding to carry out written, oral, or diagrammatic instructions and to deal with problems involving several concrete variables in or from standardized situations. Dictionary of Occupational Titles, Appendix C, 1991 WL 688702.[2] Hensley argues that her limitations match the description for only Level 1 jobs. She cites *Macek v. Colvin*, No. 2:12-CV-197-APR, 2013 WL 5436924 (N.D. Ind. Sept. 27, 2013), and *Smith v. Colvin*, No. 2:12-CV-259-APR, 2013 WL 4950496 (N.D. Ind. Sept. 9, 2013), to support her argument.

---

[2] GED Reasoning Levels range from 1 to 6. In a Level 1 job, a worker must "[a]pply commonsense understanding to carry out simple one- or two-step instructions." *Id.* She must also "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* In a Level 2 job, a worker must "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. *Id.* She must also, "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

In *Macek*, the court noted that the ALJ limited the claimant to one- or two-step instructions. The ALJ, however, concluded that the claimant could perform a Level 2 job. The court determined that this was reversible error and remanded the matter so that the ALJ could "reconsider whether there [were] jobs Macek [was] capable of performing that fall into the level one range for reasoning development due to her limitation to simple one-to-two step routine tasks." *Macek*, 2013 WL 5436924 at *15. The court in *Smith* ruled similarly. *Smith*, 2013 WL 1620496 at *8 ("[T]he ALJ must reconsider whether there are jobs Smith is capable of performing that fall into the level one range for reasoning development due to her limitation to simple one-to-two step routine tasks.).

The Court agrees with the reasoning in *Macek* and *Smith*. Hensley was specifically limited to one- to two-step instructions. This matches the description for Level 1 jobs. On remand, the ALJ must determine whether Hensley is capable of performing any Level 1 jobs.

Lastly, the ALJ noted that there are forty-five food and beverage order clerk jobs, 120 final assembler jobs, and 620 document preparer jobs in Indiana. Hensley argues that these numbers (and/or any combination of these numbers) are not significant. Rather, Hensley maintains that 1,000 jobs is the "threshold for significance." Hensley's Reply at 20 (citing *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) ("1,000 jobs constitutes a significant number"). The Commissioner, on the other hand, argues that 785 jobs is more than significant.

As noted above, the Court is remanding this matter so that the ALJ can identify other jobs that Hensley is able to perform. Because, on remand, the numbers will likely change, the Court declines to address this specific argument. The Court notes, however, that "[a]s few as 174 jobs has been held to be a significant number." *Liskowitz v. Astrue*, 559 F.3d 736, 74 (7th Cir. 2009) (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)).

## VI. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **REVERSED** and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this Entry.

SO ORDERED: 3/13/15

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.